## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| HEIDI HOSTETTLER, | ) | CASE NO. 5:15CV1601 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND DECISION** |
| COLLEGE OF WOOSTER, | ) | (Resolving Docs. 26 and 29) |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendant College of Wooster ("the College") and a motion for partial summary judgment filed by Plaintiff Heidi Hostettler.  Docs. 26, 29.  The Court finds that no genuine issues of material fact exist as to the claims set forth in Hostettler's Complaint.  As such, for the following reasons, the College is entitled to judgment as a matter of law, and its motion for summary judgment is GRANTED. Hostettler's motion for partial summary judgment is DENIED.

### I.      FACTS AND PROCEDURAL HISTORY

In the fall of 2013, Hostettler interviewed with the College for a position as a Human Resources ("HR") Generalist.  At that time, she voluntarily told the College that she was four months pregnant.  Doc. 27-1 at 29.  Following the interview, the College hired Hostettler, and she began working in September of 2013.

The job description for an HR Generalist included:

> General responsibility for providing HR consultation to the College
> community, participate in the planning, development and delivery of HR
> solutions and metrics.  Primary responsibilities include providing advice and

1

guidance to managers, fostering positive employee relations, supporting performance management, manager/staff training, and other HR projects. Additionally, this position will assume lead responsibility for development and delivery of staff training and development opportunities.

ESSENTIAL DUTIES AND RESPONSIBILITIES:

Employee Relations/Performance Management
- Provides managers with consultation and support with employee relations and performance management activities. Guides managers as they handle performance issues, specifically in the areas of performance improvement plans, writing and delivering effective performance reviews, creating development plans, and compensation decisions.
- Assists in resolving employee relations issues, working with managers and AVP HR [Assistant Vice President of HR]. Provides guidance, conducts investigations, recommends solutions and analyzes trends.

* * *

- Provides guidance to managers regarding disciplinary actions.
- Works with AVP HR [Assistant Vice President of HR] on serious policy violations and terminations.
- Performs exit interviews. Analyze trends and provide summary reports to management.

Training
- Designs and delivers internal staff development sessions based on consultation with managers and staff.
- Develops and conducts new hire orientation for all staff hires and participates in new faculty orientation activities.
- Collaborates with individuals, committees or managers in developing general, specific and/or targeted topics.
- Assists with long term training needs and recommendations based on information obtained by analyzing existing training materials, leadership and staff input and existing training gaps. Provide support and/or leadership on HR Project Teams/Reporting.

* * *

Recruiting
- Sources, screens and recruits qualified candidates for hourly, non-exempt and designated professional level positions

* * *

2

Other Skills

* * *

- Flexibility for early morning or evening meetings/events to accommodate business needs.  Occasional weekend activities may also be required.

Doc. 26-2.

For five months, Hostettler worked approximately 40 hours per week, which was considered full-time.  Doc. 27-1 at 53-54.  She arrived at the office at 8:00 a.m. and typically left between 5:00 p.m. – 6: 00 p.m.  Doc. 27-1 at 56.  During these five months, she worked during the day and conducted a few events in the evenings, including FMLA training for managers and an employee appreciation event.  Doc. 27-1 at 55.

Beginning January 31, 2014, Hostettler took maternity leave for 12 weeks.[1]  On April 15, 2014, shortly before she was scheduled to return to work following her 12-week absence, Hostettler was diagnosed with separation anxiety and then with an added diagnosis of postpartum depression.  Doc. 28-8 at 21-23.  Her doctor prescribed low dose medication and scheduled a follow-up appointment in May.  Doc. 28-8 at 21-23.  She did not return to work at the end of her leave, which had been scheduled for April 25, 2014.  Doc. 27-1 at 89.

On May 7, Hostettler submitted an "Intent to Return to Work and Fitness for Duty/Medical Release," stating that she was able to return to work a week later but with restrictions.  Doc. 27-1 at 192.  The form was completed by her doctor who "recommended [Hostettler] return for 2 days first week, then reduced schedule to 3 days per week afterward for foreseeable future."  Doc. 27-1 at 192.  Hostettler did not return to work on May 14.

On May 21, Hostettler submitted a second Certification of Health Care Provider, marked "addendum to previous paperwork," in which her doctor estimated that she needed a part-time

---

[1] Although Hostettler only worked for five months, in its leave policy, the College specifically exempted pregnancy from the eligibility requirement of one year of service.

work schedule of four hours per day, four to five days per week.  Doc. 27-1 at 197.  The next day, the College sent Hostettler a letter confirming that it would accommodate her reduced work schedule "as stated 4 hours a day, 4-5 days per week until June 30, 2014" (the end of the fiscal year).  Doc. 27-1 at 235.  After 16 weeks of leave, she returned to work on May 22, 2014.

Upon her return, Hostettler worked half days.  As a result, other employees in the office took on certain of her responsibilities such as responding to employee relations matters, screening applicants for job openings, working with hiring supervisors to fill positions, training, and "lunch and learn" programs.  Doc. 27-2 at 149, 154, 212.  On June 30, 2014, Hostettler did not provide an updated medical certification or return to a full-time schedule.  With only six people in the HR department, it was already struggling to cover employee relations and training issues arising while Hostettler was gone each afternoon.  Continuing this part-time schedule would have become even more difficult when another employee was gone on maternity leave and the department was embarking on the implementation of a new online benefits enrollment project.  Doc. 27-2 at 153-54, 163-65, 211-12, 214.  Hostettler's supervisor met with her on July 2, 9, 11 and 14 to discuss her employment, and Hostettler acknowledges that, in at least one of those meetings, her supervisor stressed that Hostettler needed to return to work full-time.  Doc. 27-1 at 134-35.

Despite all of this, in mid-July, Hostettler submitted an updated medical certification that confirmed her ability to perform all of her usual functions but requested the College extend her part-time schedule through August.  At this point, on July 16, 2014, the College sent a letter to Hostettler stating: "Since you are unable to return to your assigned position of HR Generalist in a full time capacity, the College can no longer hold your position.  As of the date of this letter, your employment with The College of Wooster will end."  Doc. 27-1 at 236.  The College then hired a

temporary employee who assisted with clerical work, and several months later, hired a permanent male employee to serve as HR Generalist.

Hostettler filed the instant action alleging 1) disability discrimination and refusal to accommodate in violation of the ADA and Chapter 4112 of the Ohio Revised Code, 2) sex/pregnancy discrimination in violation of Title VII and Chapter 4112, and 3) Family and Medical Leave Act Interference and Retaliation.  Doc. 1.  The College filed a motion for summary judgment on all claims, and Hostettler filed a motion for partial summary judgment on her claims for disability discrimination and refusal to accommodate.

## II.     LEGAL STANDARD OF REVIEW

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* At 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute, and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

## III.     LEGAL ANALYSIS

### A.  Disability discrimination under the ADA and Ohio Revised Code §4112

"In light of the fact that Ohio's disability discrimination law parallels the ADA [Americans with Disabilities Act] in all relevant respects, we apply the same analytical framework, using cases and regulations interpreting the ADA as guidance in our interpretation of the OCRA [Ohio Civil Rights Act, O.R.C. §4112.02]." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).  Therefore, the Court's analysis of Hostettler's ADA claim also resolves her state law discrimination claim.

> The ADA prohibits discrimination by a covered entity "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  A prima facie case of disability discrimination under the ADA requires that a plaintiff show: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced."

*Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702–03 (6th Cir. 2008) (*quoting Macy v. Hopkins County Sch. Bd. of Educ.,* 484 F.3d 357, 365 (6th Cir.2007).  "An employee is deemed qualified

6

only if she can perform all of the essential functions of her job, whether accommodated or not." *Williams v. AT&T Mobility Servs.*, 847 F.3d 384, 391 (6ᵗʰ Cir. 2017) (*citing* 42 U.S.C. §12111(8)).

Here, Hostettler argues that she was qualified for the HR Generalist position, but the College was required to accommodate her by allowing her to continue working a part-time schedule. The College argues that working full-time was an essential function of the job and that continuing to require the College to make the position part-time was not a reasonable accommodation.

The Sixth Circuit Court of Appeals has held that "'[r]egular, in-person attendance is an essential function…of most jobs, especially the interactive ones.'" *Id.* (*quoting EEOC v. Ford Motor Co.,* 782 F.3d 753, 762-63 (6ᵗʰ Cir. 2015) (concluding that an employee who had excessive absences was not qualified for her job and that her request to work from home as an accommodation was not reasonable)). The Sixth Circuit in *Williams* looked to its previous decision in *EEOC v. Ford Motor Co.*, and stated:

> The *Ford* decision was based in part on an analysis of the factors outlined in 29 C.F.R. § 1630.2(n)(iii) for determining whether a particular job function is essential. "Commonsense notions" that physical presence at work is important to most jobs, the court concluded, also supported this outcome. Even before *Ford*, this court had held that plaintiffs with excessive absences were not qualified individuals when they failed to perform the essential function of regularly attending their jobs.

*Williams*, 847 F.3d at 392 [internal citations omitted] (*citing EEOC v. Ford Motor Co.,* 782 F.3d 753, 762-63 (6ᵗʰ Cir. 2015)) ; *see also Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 420 (6th Cir. 2004) (concluding that an employee who was terminated because of excessive absences that were unrelated to diabetes was not qualified, and would not be qualified due to these absences even if her accommodation request for medical leave were granted); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (concluding that an employee was not qualified

because she had been on a year-long medical leave of absence, and her physician had not released her for work or specified a date on which she would be able to return).

In this case, the record demonstrates that an essential function of the job as an HR Generalist was working full-time. The job description listed evenings and weekends as requirements given a certain project or department needs. The record indicates that Hostettler, worked 40 hours prior to taking maternity leave, and she worked evenings at times to complete her job duties. Doc. 27-1 at 57. While Hostettler now seems to argue that the job did not require 40 hours per week, she still admits that it required more time than 20 hours per week she was willing or able to work given her medical restrictions.

> Q: Did you think that the job required a forty-hour week?
>
> A: No.
>
> Q: What did you think was an appropriate amount of time?
>
> A: Probably thirty, thirty-five.

Doc. 27-1 at 54. Hostettler also admits that her supervisor told her that the College needed her to work full-time and that Hostettler wanted to work toward coming back full-time, although she was uncertain when or how that would occur. In fact, she completed the FMLA return-to-work forms and stated that the position was full-time. Given the evidence in the record, the Court finds that working full-time was an essential function of the job.

The Court next turns to the issue of reasonable accommodation. "When the employee seeks a reasonable accommodation, she must establish that a 'reasonable' accommodation is possible, and bears a traditional burden of proof that she is qualified for the position with such reasonable accommodation. If the plaintiff establishes that a reasonable accommodation is possible, the employer bears the burden of proving that such reasonable accommodation would

impose an undue hardship." *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 728 (6th Cir. 2000).  Hostettler argues that the College should have allowed her to work part-time throughout the summer as a reasonable accommodation.  Although Hostettler testified that she was considering returning to work full-time after the summer, she had no definite schedule or plan to return full-time.  When her supervisor told her that the College needed her to return full-time, she responded with yet another form from her doctor stating that she needed to extend her part-time schedule.  By this time, the College had provided her 16 weeks of maternity leave and 8 weeks at a part-time schedule.

While Hostettler was working part-time, other employees, including her supervisor, were forced to cover for various responsibilities that were otherwise assigned to her. For example, her supervisor testified that at least 10 people came into the office with HR questions when Hostettler was working a part-time schedule and was not in the office.  Hostettler would otherwise have responded to the employees, but she was out of the office in the afternoon, and her supervisor had to step away from her own responsibilities and cover for Hostettler.  Other coworkers also covered when Hostettler was working part-time, which seemed to add to their stress and workload.  Doc. 36-2 at 5. Hostettler's supervisor testified that while other employees covered for her responsibilities, still other duties were neglected because they were short-staffed due to Hostettler's part-time schedule.

The record indicates that Hostettler was unable to perform the essential function of working full-time or fulfilling all of the responsibilities of her job with a part-time accommodation. The College was not required to accommodate her by turning a full-time position into a part-time job by redistributing the duties to other workers.  *Hoskins*, 227 F.3d at 729 (ADA does not require employers to accommodate individuals by shifting essential job functions to others).  Requiring

the College to transform the position into a part-time job or maintain a part-time schedule indefinitely is not a reasonable accommodation.  *Williams*, 847 F.3d at 394 ("A physician's estimate of a return date alone does not necessarily indicate a clear prospect for recovery, especially where an employee has repeatedly taken leaves of unspecified duration and has not demonstrated that additional leave will remedy her condition."); *see also Maat v. County of Ottawa*, 657 Fed.Appx. 404, 412-13 (6th Cir. 2016) (concluding that where an employee had already received substantial leave, additional leave was not a reasonable accommodation because her physician's vague estimate of a return date was uncertain and indicated that she might need further treatment).

Hostettler argues that continuing the part-time leave is a reasonable accommodation because the College previously provided a modified schedule.  However, at the time of her termination, the College had already provided 24 weeks of leave of absence or modified leave through a part-time schedule.  Hostettler herself said she did not have a specific plan for returning to work full-time, which was supported by her physician's general statement that she "should only work ½ time **for now**…."  Doc. 27-3 (emphasis added).  The Sixth Circuit has previously held that when "an employer has already provided [] substantial leave, an additional leave period of a significant duration, with no clear prospects of recovery, is an objectively unreasonable accommodation." *Aston v. Tapco Intern. Corp.*, 631 Fed. Appx. 292, 298 (6th Cir. 2015) (concluding that additional leave was not a reasonable accommodation where an employee had already received a 26-week leave and had provided a physician's estimate of a return date but had also submitted evidence that he still needed additional recovery time beyond that date).  As such, continuing the part-time schedule was not a reasonable accommodation.

Hostettler also argues that the College did not engage in the interactive process as suggested under Sixth Circuit case law.  Doc. 29 at 21.  However, it is undisputed that Hostettler's supervisor met with her four times after the June 30 deadline to return to work full-time.  The two discussed her employment and the needs of both parties – the College for a full-time worker and Hostettler for a part-time schedule.  The law does not require that the parties meet and that the employer concede to the employee's request in order to have fulfilled the interactive process.  The College did meet with Hostettler and allowed her to continue working part-time while the meetings were ongoing and before her final doctor's certification.  This is sufficient to have engaged in the interactive process.

 Given all of this, Hostettler was not qualified for the position because she could not complete the essential function of working full-time, with or without a reasonable accommodation.  Thus, she cannot demonstrate an issue of material fact as to her claims for disability discrimination under the ADA or O.R.C. §4112.  The college's motion for summary judgment is GRANTED, and Hostettler's motion for partial summary judgment is DENIED.

### B.  Sex / pregnancy discrimination

Title VII prohibits an employer from discriminating against an employee "because of sex," which includes discrimination on the basis of pregnancy.  *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (*citing* 42 U.S.C. §2000e(k)).  When analyzing pregnancy or sex discrimination, the Court considers whether there is direct or circumstantial evidence of discrimination.  Hostettler initially makes the argument that direct evidence exists.  She makes the general statement in her opposition brief that "[b]ecause the College admits terminating Hostettler because of her impairment, which included post-partum depression – a medical condition related to pregnancy and child birth – Hostettler proves her pregnancy discrimination claim through the

"direct" method of proof and the *McDonnell Douglas* framework is immaterial." Doc. 34 at 26. Hostettler gives no further analysis to support this general legal conclusion. Furthermore, upon review of the record, the statement appears to mischaracterize the evidence since the College terminated her employment due to failure to work full-time and not because she was diagnosed with post-partum depression or separation anxiety. In fact, Hostettler testified that the College terminated her for failure to return to work full-time. Doc. 27-1 at 144-45.

> Q: Okay.  And at the bottom [of Hostettler's termination letter] it says, "Since you are unable to return to your assigned position of HR Generalist in a full-time capacity, the College can no longer hold your position," correct?
>
> A: Correct.
>
> Q: And do you have reason to believe that's not a true statement?
>
> A: Well, no.  At the time I was not – I was not working full-time.

Doc. 27-1 at 144-45.  There is no direct evidence of discrimination, and the Court then moves to the issue of circumstantial evidence.

"Like any Title VII case, a pregnancy discrimination claim in which the plaintiff does not claim to have direct evidence of the discrimination is analyzed under the *McDonnell Douglas* evidentiary framework, which requires that the plaintiff first establish a prima facie case of discrimination."  Under *McDonnell Douglas*, a plaintiff's burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802.  "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  *Id.*  If the employer is successful, then the burden shifts back to the plaintiff to demonstrate that the employer's reasoning was a pretext for unlawful discrimination.  *Id.*  "Although the burdens of production shift, [t]he

12

ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) [internal citations omitted].

In the interest of efficiency, the Court will not analyze whether Hostettler has made a prima facie case of discrimination.  Instead, the Court moves directly to the issue of whether the College has established evidence of a legitimate, non-discriminatory reason for the alleged adverse employment action.  The Court finds that there is no genuine issue of material fact that the College had a legitimate, non-discriminatory reason for terminating Hostettler after she informed them that she could not or would not work full-time. As discussed above, full-time status is an essential function of the position.  The College informed her, in writing, that they would provide her with a part-time schedule through June 30, 2014 but that she was expected to return to work full-time after that date.  She did not return full-time but instead submitted a doctor's certification two weeks later that she needed to work part-time "for now."  She was then terminated in writing, noting her failure to return full-time as the reason for her termination.

The burden then shifts back to Hostettler to demonstrate that this legitimate, non-discriminatory reason for termination was a pretext.  However, she points to no evidence in the record that would suggest pretext nor does she argue pretext.  As such, there are no genuine issues of material fact on the claims for sex / pregnancy discrimination.  The College is entitled to judgment as a matter of law, and its motion for summary judgment is GRANTED.

### C.  FMLA interference and retaliation

> To establish a claim for FMLA interference, a plaintiff must show that: (1) she was an eligible employee; (2) her employer was a covered employer; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intent to take leave; and (5) her employer denied her FMLA benefits or interfered with FMLA benefits or rights to which she was entitled.

13

*Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir.2003).   The parties spend considerable time arguing whether Hostettler was or was not eligible for FMLA under legal and equitable principles.   However, in looking at the record, the College treated Hostettler's leave requests as if she had worked long enough to be eligible under the statute and accepted her FMLA leave forms.  The Court will therefore continue its analysis assuming arguendo that she was eligible for FMLA.

It is clear from the record that Hostettler received 16 weeks of maternity leave and 8 additional weeks of part-time leave.  This leave time exceeded FMLA requirements.  As noted above, it was not a reasonable accommodation to allow Hostettler to continue working part-time when an essential function of the job was a full-time schedule.  The College committed to part-time leave through June 30, 2014, but after that time, it was not required to accommodate her further.  Thus, the college did not interfere with Hostettler's FMLA rights.

As for her claim of FMLA retaliation, it is analyzed under the *McDonnell Douglas* framework discussed above for claims of sex / pregnancy discrimination.  *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).  Because the analysis is identical, the Court incorporates the reasoning and findings discussed above.  There are no genuine issues of material fact as to Hostettler's claims for FMLA interference and retaliation.  The College is entitled to judgment as a matter of law.

14

### IV.      CONCLUSION

Reviewing the facts in a light most favorable to Plaintiff Heidi Hostettler, no genuine dispute of material fact exists on any claim against Defendant College of Wooster. Therefore, the College is entitled to judgment as a matter of law, and its motion for summary judgment is GRANTED.  Hostettler's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.


Dated: 03/29/2017                                          */s/John R. Adams*_____
                                                                     JOHN R. ADAMS
                                                                     UNITED STATES DISTRICT JUDGE